## UNITIED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action File No.:

NANCY GONZALEZ,

Plaintiff,

v.

TRISTAR PRODUCTS, INC.,

Defendant.

---

### COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Plaintiff Nancy Gonzalez ("Plaintiff"), by and through her attorneys, **JOHNSON BECKER, PLLC**, upon information and belief, at all times hereinafter mentioned, alleges as follows:

### NATURE OF THE CASE

1.    Defendant Tristar Products, Inc. ('Tristar", "Defendant" or "Defendant Tristar") hereinafter generally referred to as "Defendant Tristar") designs, manufactures, markets, imports, distributes and sells a wide-range of consumer products, including the subject "Tristar Power Pressure Cooker XL," which specifically includes the Tristar Pressure Cooker Model Numbers PPC-770, PPC-780 and PPC-790 (referred to hereafter as "pressure cooker(s)").

2.    Defendant Tristar touts that its pressure cookers are designed with several "Built-In Safety Features," which purport to keep the consumer safe while using the pressure cooker. Such Safety Devices include a supposed "lid safety device." The "lid safety device" is intended to prevent the

1

unit from building pressure if the lid is not closed properly, as well as to prevent the lid from opening until all pressure is released.[1]

3.    Despite Defendant Tristar's claims of "safety," it designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to its consumers.

4.    Specifically, said defects manifest themselves when, despite Defendant Tristar's statements and "Safety Features," the lid of the pressure cooker is removable with built-up pressure, heat and steam still inside the unit.  When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders. The Plaintiff in this case was able to remove the lid while the pressure cooker retained pressure, causing her serious and substantial bodily injuries and damages.

5.    Defendant Tristar knew or should have known of these defects but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

6.    As a direct and proximate result of Defendant Tristar's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

---

[1] Attached hereto and incorporated by reference as Exhibit A is the Power Pressure Cooker XL Model No. PPC-770 Owner's Manual. *See* pg. 3.

**PLAINTIFF NANCY GONZALEZ**

7.      Plaintiff **NANCY GONZALEZ** is a resident and citizen of the city of Fort Collins, County of Larimer, State of Colorado

8.      On or about June 29, 2023, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed use of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff. The incident occurred as a result of the failure of the pressure cookers supposed "Built-In Safety Features," which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendant Tristar's failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

**DEFENDANT TRISTAR PRODUCTS, INC.**

9.      Defendant Tristar designs, manufactures, markets, imports, distributes, and sells a variety of consumer products[2] including, *inter alia*, pressure cookers, air fryers, blenders, juicers, and coffee makers.

10.     Defendant Tristar boasts that "[s]uperior innovation at affordable prices has enabled [them] to create #1 brands worldwide for more than 25 years" resulting in "over $1 billion in retail sales."[3]

11.     Prior to April 30, 2018, Defendant Tristar was known as 'Tristar Products, Inc.", and was a Pennsylvania Corporation with its registered place of business at 2620 Westview Drive, Wyomissing, Berks County, Pennsylvania 19610, and its principal place of business located at 492 U.S. 46, Fairfield, New Jersey 07004.

---

[2] *See generally*, www.tristarcares.com/products/housewares/
[3] https://www.tristarproductsinc.com/

3

12.     As of April 30, 2018, Defendant Tristar became "Tristar Innovative Products, Inc." and is now a Florida Corporation with its registered place of business at 1293 North University Drive, #322 City of Coral Springs, Broward County, Florida 33071, and its principal place of business located at 492 U.S. 46, Fairfield, New Jersey 07004.

13.     As of June 12, 2020, Defendant Tristar changed its name back to "Tristar Products, Inc."., and changed its registered place of business to 2050 W. County Highway 30a, #M1-109 Santa Rosa Beach, Walton County, Florida 32459.

14.     As of August 1, 2024, Defendant Tristar changed its registered place of business to 505 Maitland Avenue, Suite 1170 Altamonte Springs, FL 32701.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction as prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

17.     Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Colorado and intentionally availed itself of the markets within Colorado through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

18.     Defendant Tristar is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers at issue in this litigation.

4

19.     Defendant Tristar aggressively warrants, markets, advertises and sells its pressure cookers as "state of the art kitchen science," [4] allowing consumers to cook "wholesome, sit down, family-style meal[s] with just the push of a button;" [5] "in a fraction of the time" [6] as other kitchen appliances; and that "[t]here's no safer way to cook." [7]

20.     To further propagate its message, Defendant Tristar has, and continues to utilize numerous media outlets including, but not limited to, television infomercials, social media websites such as YouTube, third-party retailers, and professional chef endorsements. For example, the following can be found on Defendant Tristar's Power Pressure Cooker XL website[8] from "culinary expert" Eric Theiss, who is featured in many of Defendant Tristar's YouTube videos, as well as its television infomercial:

> "I have seriously never seen a cooking tool so easy, so versatile, so affordable that anyone can make quality, delicious meals, perfectly cooked from the very first time! The Perfect Cooker is the one pot that does it all!"[9]

21.     In one YouTube video, Mr. Theiss states that "when your pressure cooker is up to pressure, the lid locks on. I couldn't get this lid open if I wanted to. There's no way you're gonna open it. So, it's loaded with safety features, you guys. So, if you've never used a pressure cooker before, this is one of the safest ones you can get."[10]  Later in the video, when Mr. Theiss is releasing the pressure from the pressure cooker, he states that "even if I wanted to," he couldn't open the lid

---

[4] https://www.youtube.com/watch?v=hN13IrMs_S4 at 1:34-1:35
[5] *Id*. at 9:04 - 9:08.
[6] *Id*. at 9:08 – 9:10.
[7] https://www.youtube.com/watch?v=kCESkfSSROk at 2:54
[8] http://www.powerpressurecooker.com/?gclid=Cj0KEQjw4cLKBRCZmNTvyovvj-4BEiQAl_sgQvo_7hhyOkL0DOfmJ0ZaW4G7brJ22YwsEEHAaros9zUaAqMb8P8HAQ
[9] http://www.powerpressurecooker.com/about.php
[10] https://www.youtube.com/watch?v=UsYE9e4nQLs&feature=youtu.be

"because the pressure is still inside."[11]   The pressure cooker "knows" when the pressure has fully released and will unlock "automatically."

22.      During the ordinary and routine operation of the pressure cooker, the unit generates heat and steam to cook; utilizing temperatures up to 248 degrees Fahrenheit (120 degrees Celsius), which is intended to create "a more sterile and healthier environment when compared to traditional cooking methods".[12]

23.      According to the Owner's Manual accompanying each individual unit sold, the pressure cookers purport to have "Built-In Safety Features," misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use. Said "Safety Features" include, but are not limited to, the following:

- Lid Safety Device: Prevents pressure build-up if lid is not closed properly and prevents lid from opening until all pressure is released.

- Pressure and Temperature Sensor Controls: Maintain even heat and pressure by automatically activating or deactivating the power supply.

- "Back-up" Safety Release Valve: Should the Temperature/Pressure Sensor device malfunction, causing pressure to build beyond maximum setting, the "Back-Up" will automatically "kick in" and release the built-up pressure.

- "Clog Resistant" Feature: Prevents food from blocking the steam release port.

- "Spring-Loaded" Safety Pressure Release: Should all safety features listed above fail, this "spring-loaded" device located beneath the heating element will automatically lower the Inner Pot, causing it to separate automatically from the Rubber Gasket. This will enable the steam and pressure to automatically escape around the pot Lid, avoiding a dangerous situation.

- Temperature "Cut-Off" Device: Should the unit malfunction and cause the internal temperature to rise beyond the "Safe" limit, this device will cut-off the power supply and will not automatically reset.[13]

---

[11] *Id.*
[12] *See* PPC-770 Owner's Manual at pg. 2.
[13] PPC-770 Owner's Manual at pg. 3.

24.    In addition to the "Built-In Safety Features" listed in the manual, in Defendant Tristar's "Frequently Asked Questions" YouTube video,[14] Defendant Tristar states that lid of the pressure cookers "should only come off if there [is] no pressure inside.[15]" Specifically:

- "People worry that the lid might come off. It won't." (1:02)

- "The lid on the Power Pressure Cooker XL can only come off if there's no pressure left inside the pot.  And remember, if there is pressure present inside the pot, the lid will stay securely closed so you don't have to worry." (1:02)

- "Once your meal is finished, the unit will depressurize and automatically stop cooking and switch to the Keep Warm mode. There's no safer way to cook." (2:54)

25.    By reason of the forgoing acts or omissions, the above-named Plaintiff and/or their family purchased their pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

26.    Plaintiff used her pressure cooker for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by Defendant Tristar.

27.    However, the aforementioned pressure cooker was defectively designed and manufactured by Defendant Tristar in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff and similar consumers in danger while using the Pressure Cookers.

---

[14] https://www.youtube.com/watch?v=kCESkfSSROk (last accessed May 12, 2025).
[15] *Id*.

28.     Defendant Tristar's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

29.     Further, Defendant Tristar's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

30.     Economic, safer alternative designs were available that could have prevented the Pressure Cooker's lid from being rotated and opened while pressurized.

31.     Defendant Tristar knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendant Tristar continues to ignore and/or conceal its knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of its pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

32.     As a direct and proximate result of Defendant Tristar's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous Pressure Cooker, which resulted in significant and painful bodily injuries upon Plaintiff's simple removal of the lid of the Pressure Cooker.

33.     Consequently, the Plaintiff in this case seeks damages resulting from the use of Defendant Tristar's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

34.     At the time of Plaintiff's injuries, Defendant Tristar's pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

35.     Defendant Tristar's pressure cookers were in the same or substantially similar condition as when they left the possession of Defendant Tristar.

36.     Plaintiff did not misuse or materially alter the pressure cooker.

37.     The pressure cooker did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

38.     Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

   a.  The pressure cookers designed, manufactured, sold, and supplied by Defendant Tristar were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

   b.  The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

   c.  Defendant Tristar failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

   d.  Defendant Tristar failed to warn and place adequate warnings and instructions on the pressure cookers;

   e.  Defendant Tristar failed to adequately test the pressure cookers; and

   f.  Defendant Tristar failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

39.     Defendant Tristar's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

9

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

## COUNT II
## NEGLIGENCE

40.    Defendant Tristar had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cooker that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

41.    Defendant Tristar failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale, and marketing of its pressure cookers in that Defendant knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

42.    Defendant Tristar was negligent in the design, manufacture, advertising, warning, marketing, and sale of its pressure cookers in that, among other things, it:

      a.  Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

      b.  Placed an unsafe product into the stream of commerce;

      c.  Aggressively over-promoted and marketed its Pressure Cookers through television, social media, and other advertising outlets; and

      d.  Was otherwise careless or negligent.

43.    Despite the fact that Defendant Tristar knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendant continued to market its pressure cookers to the general public (and continues to do so).

WHEREFORE, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

## COUNT III
## BREACH OF IMPLIIED WARRANTY OF MERCHANTABILITY

44.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

45.    At the time Defendants marketed, distributed, and sold its pressure cookers to the Plaintiff in this case, Defendants warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

46.    Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

47.    Defendants' pressure cookers were not merchantable and fit for its ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

48.    Plaintiff in this case used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

49.    Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

WHEREFORE, Plaintiff demands judgment against Defendant for damages, as well as punitive damages according to proof, together with interest, costs of suit, and all such other relief

11

as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages when evidence or facts supporting such allegations are discovered.

### DEMAND FOR JURY TRIAL

Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant Tristar for damages, including punitive damages if applicable, to which she is entitled by law, as well as all costs of this action and interest to the full extent of the law, whether arising under the common law and/or statutory law, including:

    a. judgment for Plaintiff and against Defendant Tristar;

    b. damages to compensate Plaintiff for their injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant Tristar's pressure cooker;

    c. pre and post judgment interest at the lawful rate;

    d. punitive on all applicable Counts as permitted by the law;

    e. a trial by jury on all issues of the case; and

    f. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully Submitted,

Dated: May 15, 2025

**JOHNSON BECKER, PLLC**

*/s/ Adam J. Kress, Esq*
Michael K. Johnson, Esq. (MN #0258696)
Adam J. Kress, Esq. (MN #0397289)
Anna R. Rick, Esq. (MN #0401065)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 / (612) 436-1801 (f)
mjohnson@johnsonbecker.com
akress@johnsonbecker.com
arick@johnsonbecker.com

***Attorneys for Plaintiff***

13